# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| MARILYN C. KINCAID, | : | Bankruptcy No. 07-15890DWS |
| | : | |
| Debtor. | : | |

# OPINION

**BY:  DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court are the Debtor's Objections to (1) Claim #10 and #11 filed by eCast Settlement Corporation ("eCast") and (2) Claim #17 and #18 filed by B-Real LLC ("B-Real") (together with eCast, "Claimants").  Each of the disputed claims represents amounts due in connection with credit card accounts which allegedly were acquired by Claimants through assignment.  Debtor objects to the allowance of these claims on the grounds that Claimants have not established that they are the assignees entitled to payment on account of these debts.  Briefs have now been filed as contemplated and the matters are ripe for decision.

**BACKGROUND**

eCast filed Claim #10 in the amount of $1,473.99 as assignee of GE Money Bank/ Home Shopping Network. In support of the unsecured claim, it attached a computer generated "account summary" which also identifies the final four digits of an account number (0107) and the account type as "credit card." Proof of claim #11 in the amount of $1,236.65 was filed on behalf of eCast as assignee of GE Money Bank/ Lord & Taylor and is supported by the same type of summary sheet evidencing the last four digits of an account number (0153) and the designation "credit card." There are no other documents annexed to either of the proofs of claim but rather an explanation (the "Explanation") on the bottom of each account summary which reads:

> Pursuant to paragraph 7 Official Bankruptcy Form 10, Proof of Claim, in lieu of attaching voluminous account documents, a summary of the account compiled from the information contained in the database of GE Money Bank, Home Shopping Network [ GE Money Bank/Lord & Taylor], and their agents, if any, is provided (See instructions to Official Form 10). This debt arises from the use of a credit/ charge card account or other money loaned, the supporting documents for which were provided by GE Money Bank/ Home Shopping Network [GE Money Bank/Lord & Taylor], to the debtor pre-petition. For further information about this claim call 1-800-962-6030 and ask to speak to the Claims Servicing Supervisor. Some documents may no longer be available.

The Debtor testified that she never heard of eCast nor GE Money Bank and had no obligation to either.[1] However, her Schedule F identifies an undisputed credit card claim in the amount

---

[1] In recognition of the nature of the Objection, eCast subsequently attached executed copies of a Bill of Sale reflecting a transfer of unidentified Receivables from GE Money Bank to eCast on November 28, 2007. The document, which was proffered to Debtor's counsel with the hope that the
(continued...)

of $1,473.99 due Home Shopping Network and a $1,236.65 credit card debt to Lord & Taylor, neither of whom have filed a proof of claim in this case. Indeed while the Schedule F does not indicate an account number for the Home Shopping Network claim, the account number she identifies for the Lord & Taylor claim matches the last four digits in the proof of claim summary sheet for claim #11.

B-Real filed Claim #17 in the amount of $3,392.04 as assignee of Chase Bank USA, N.A. In support of the claim "based on an unsecured account acquired from Assignor [identified as Chase Bank USA, N.A."], it attached a document purporting to be a "redacted version of the information contained in the computer files documenting the account." It shows the last four digits of the account number (9692) and the basis of the claim as credit card. The second B-Real unsecured claim #18 is in the amount of $4,569.40 and is supported by the same type of account information. It identifies the assignor as Chase Bank USA, N.A. and the last four digits (3075) of an account number. Debtor testified that she had no contract with B-Real, had never heard from B-Real and indeed did not know who it was. However, she did acknowledge debts in the same amount listed on her Schedule F as owed to Chase Card Services, P.O. Box 15153, Wilmington, DE and Chase Coldwater Creek, P.O. Box 15298, Wilmington, DE, neither of whom have filed a proof of claim in this case. The account numbers she identifies for each match the last four digits of accounts identified in the proof of claim summary for claims #17 and 18. Debtor does not dispute the amounts

---

(...continued)
Objection would be withdrawn, was not presented as part of the record. However, on May 7, 2008, eCast filed an amendment to both Claim #10 and #11 attaching the Bill of Sale as evidence of the assignment of certain unidentified receivables from, inter alia, GE Money Bank to eCast on November 28, 2007.

-3-

owed but only the claimant seeking payment. Debtor also objects to the B-Real claims as being duplicative, contending that Debtor only had one account with Chase.

**DISCUSSION**

The general burdens of proof in proof of claim litigation are well established. Bankruptcy Rule of Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes *prima facie* evidence of the validity and amount of the claim. Amatex Corporation v. Aetna Casualty & Surety Co., et al., 107 B.R. 856, 870 (E.D. Pa. 1989); In re Wall to Wall Sound & Video, Inc., 151 B.R. 700, 701 (Bankr. E.D. Pa. 1993). Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force. In re Wells, 51 B.R. 563, 566 (Bankr. D. Col. 1985). The objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of the allegations of the creditor's proof of claim. Id. "[T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). If the objecting party succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the Claimant. Id. at 174.

Debtor contends that all of the challenged proofs of claim should be disallowed as failing to attach documentation of the claimed assignments. Rule 3001(c) states that "when a claim . . . is based on a writing, the original or duplicate shall be filed with the proof of claim." Rule 3001(a) further provides that a proof of claim shall conform substantially to the

appropriate Official Form and such Official Form requires the attachment of documents when a claim is based on a writing.[2] There is no question that neither eCast nor B-Real have established a documentary link from the original merchant creditors to whom Debtor admits an obligation to themselves as present assignees who have filed the proofs of claim.[3] There is no evidence that Debtor has made any request for further documentation from either creditor.

The law is well settled that failure to attach supporting documentation as required by a rule of procedure is not grounds for disallowance of a claim as § 502(b) supplies the exclusive basis for claim disallowance. Rather where the proof of claim does not adhere to the requirements of Rule 3001 by providing the facts and documents necessary to support the claim, it is not entitled to the presumption of *prima facie* validity. E.g., Heath v. American Express Travel Related Services (In re Heath), 331 B.R. 424, 433 (9th Cir. BAP 2005); Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation), 318 B.R. 147, 152 (8th Cir. BAP 2004); In re Moreno, 341 B.R. 813, 817 (Bankr. S.D. Fla. 2006) (citing cases); In re Shank, 315 B.R. 799, 810 (Bankr. N.D. Ga. 2004) (*quoting* In re Stoecker, 5 F.3d 1022, 1028 (7th Cir. 1993)). Absent the application of the presumption, the burden of going

---

[2] What constitutes a sufficient writing for the purposes of establishing a credit card claim has been the subject of a plethora of published bankruptcy decisions, many involving the Claimants herein. Since Debtor's documentation objection relates only to evidence of the Claimants' assignments, I need not address the differing views regarding sufficient documentation of the underlying claim. See, e.g., In re Kemmer, 315 B.R. 706, 714-15 ( Bankr. E.D. Tenn 2004); In re Cluff, 313 B.R. 323, 332-36 (Bankr. D. Utah 2004).

[3] B-Real has not filed any supporting documentation regarding the assignment from Chase Bank USA, N.A. to it. While eCast has filed a Bill of Sale that evidences the assignment of receivables from GE Money Bank to it, it has not supplied any evidence of a link between Lord & Taylor and Home Shopping Network and GE Money Bank and the assignment it has provided does not identify Debtor or her accounts specifically.

forward and proving its claim by a preponderance of the evidence remains on the claimant. In re Porter, 374 B.R. 471, 483 (Bankr. D. Conn. 2007); In re Tran, 369 B.R. 312, 317-18 (Bankr. S.D. Tex. 2007). Whether this evidentiary consequence attaches to the proofs of claim filed by Claimants is the first issue I turn to.

<u>A.</u>

In In re Hughes, 313 B.R. 205 (Bankr. E.D. Mich. 2004), the Court considered the precise form of Account Summary filed by eCast here in an objection to an eCast proof of claim. Finding the Explanation quoted above to be insufficient to comply with the requirement of Rule 3001(c) for filing a copy of the writing on which the claim is based, the Court held:

> Because there is no evidence of a written agreement between eCast and the Debtor, the Court concludes that eCast's Claim No. 4 and Claim No. 5, *as originally filed*, are not sufficient to be afforded *prima facie* validity pursuant to Fed.R.Bankr.P. 3001(f).

Id. at 210 (emphasis in original). Only when eCast responded to the objection by filing additional documents demonstrating an assignment from Chase Mastercard and Associates to eCast did the creditor meet its burden.[4] Likewise in In re Armstrong, 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005), the Court held that a transferee has an obligation to document its

---

[4] Most courts will provide the claimant an opportunity to supplement its documentary support as eCast did here. Given the volume of claims filed by entities such as eCast and B-Real, it is arguably an unnecessary burden on the claimants and courts to have the extra documentation filed when the debtor does not object to the claim. Heath, 331 B.R. at 435-36 (citing cases). However, upon request of a debtor and assuming the debtor has a good faith basis for claiming the debt is not properly owed, an assignee should be prepared to provide the additional documentation or suffer the loss of the presumption afforded its claim. For example, in Heath, the Court explained that the burden was shifted when a document request made prior to the objection being lodged was ignored by the creditor or demonstrated a basis to object to the claim.

-6-

ownership of the claim under Rule 3001 and that failure to attach the transfer documents will result in the loss of the claim's *prima facie* validity.  See also In re Povey, 2008 WL 1376271 (Bankr. E.D. Okla. April 9, 2008).

Other than the reference in its Account Information attachment to Chase Bank USA, Inc. as assignor, B-Real has not provided any support for its claim of ownership.  eCast, as noted, has filed the amended claim after receiving the Objection.  While eCast's amendment now includes the Bill of Sale by which it has acquired its interest, Debtor still argues that the eCast documentation is insufficient since the Bill of Sale evidences the acquisition by eCast of the receivables from GE Money Bank but there is no documentation of any contractual relationship between GE Money Bank and Lord & Taylor or Home Shopping Network.[5]  Debtor cites no authority for this proposition although it may be implied from the cases that require some linkage to be demonstrated between the original credit card account holder and the assignee.[6]  The flaw in this argument is that Rule 3001(c) only

---

[5] Debtor does not object on the grounds that the Bill of Sale fails to identify the Debtor or her accounts specifically.  In In re Tran, 369 B.R. 312 (S..D. Tex. 2007), the district court affirmed the bankruptcy court's conclusion that supplying the general assignment agreements between eCast and three banks from which they contend the debtor's credit cards were issued was insufficient where the agreements did not specifically identify the debtor of her respective accounts.  On the other hand, the Hughes Court found this level of documentation unnecessary and burdensome on creditors without any benefit conferred on the debtor.  Where, however, duplicate claims are filed or where there is a material discrepancy in the amount scheduled by a debtor and the claim filed by the creditor, additional evidence may be required.  Hughes, 313 B.R. at 212.  This issue is not presented here.

[6] The one case I have identified that so holds was vacated on reconsideration when the bankruptcy judge accepted the argument made by Claimants here that Rule 3001(e) dictates that evidence of the assignment not be required.  Before so concluding, the Court in In re Relford, 323 B.R. 669, 675 (Bankr. S.D. Ind. 2004), refused to accord *prima facie* validity to a proof of claim
(continued...)

requires the writing by which the <u>claimant acquired</u> its claim. Accepting Debtor's assumption that the GE Money Bank acquired the credit card accounts from Lord & Taylor and Home Shopping Network, I find that a *per se* requirement that the document by which its seller acquired ownership of the claim goes beyond the express language of the Rule. I would therefore not hold the assignee to that requirement provided that the claims can otherwise be identified.[7] For example, if the Bill of Sale were supported by the schedule that evidenced the inclusion of claims against the Debtor, it would not be necessary to have the initial transfer documents. It also might be sufficient to support the filed claim by other documents that evidence that the assignee was in the business of purchasing claims from the seller. However, there must be some documentation that evidences that Claimant has the right to assert a claim for the credit card debt for the presumption to apply. There is none here.

---

(...continued)
supported by a Bill of Sale that did not link the claimant with the original creditor. The Bill of Sale merely documented eCast's acquisition of the receivables from its seller (GE Capital) but not the assignment from the original credit card merchant (<u>i.e.</u>, J.C. Penney to GE Capital).

[7] Indeed it may be that GE Money Bank was the original issuer of the Lord & Taylor and Home Shopping Network credit cards, a possibility that B-Real's attorneys could have readily established. However, from the many cases I have now read, it appears that the Claimants' approach is to provide bare bones information with the filed proof of claim. The level of effort made supplementing is somewhat uneven. It is hard to discern whether it is actually burdensome to document these claims or claims purchasers just cannot be bothered. While their "account summaries" intone the burden of producing voluminous documentation on these many and small claims, they appear to be able to come up with the "evidence" when pressed to their proof. Balancing the debtor's right to be able to verify that the claimant is the owner and the claimant's right not to be harassed with *pro forma* documentation objections that have no underlying basis is the objective of this and related contested matters.

As noted, Claimants respond by arguing that Bankruptcy Rule 3001(e)[8] simply obviates this showing. Their rationale is that since assignment documents are expressly required when an assignment occurs <u>after</u> the filing of the proof of claim and are not required as here when the transfer occurs <u>before</u> the claim is filed, it follows that no evidence of the assignment need be attached to the proof of claim. The Claimants cites cases that have so held. While I am not persuaded that they all are on point,[9] I agree that the some courts have found this argument persuasive. See, e.g., In re Cox, 2007 WL 4219407 (Bankr. W.D.

---

[8] Rule 3001(e) states in pertinent part:

(1) Transfer of Claim Other Than for Security Before Proof Filed. If a claim has been transferred other than for securioty before proof of claim has been filed, the proof of claim may be filed only be the transferee or an indenture trustee.

(2) Transfer of Claim Other Than for security After Proof Filed. If a claim other than [exceptions not applicable] has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee....

[9] Both cite Resurgent Capital Servs. v. Burnett (In re Burnett), 306 B.R. 313, 318-19 (9th Cir. BAP 2004) as support. However, that case held solely that there is no requirement to disclose the consideration for the transfer, an issue distinct from ownership of the claim. Indeed in that case, the creditor had filed sufficient documentation of the transfer. Accord, In re Kendall, 380 B.R. 37, 46 n. 1 (Bankr. N.D. Okla. 2007). eCast cites to the decision of my colleague Chief Judge Stephen Raslavich in In re Peck, 2008 WL 416927, at *4 (Bankr. E.D. Pa. Feb. 13, 2008), for support for its position that no evidence of an assignment is required to present a *prima facie* valid claim. However, in Peck, the Court found other evidence that the claim was assigned to eCast. Specifically, the original claim was filed as an agent of FIA with a statement that its interest might change if FIA charged off the account which it subsequently did. The Court took note of eCast's Transfer of Claim other than for Security (the "Transfer") to itself which identified FIA as the transferor and eCast as transferee as well as the amount of the claim, the last four digits of the account number and the date that the original claim was filed. Other than the debtor's listing the claim as disputed, the information was consistent with the debtor's Schedule F. After being served with the Transfer, FIA did not object and eCast amended its claim as assignee. The Court found that the debtor's objection was a "thinly disguised challenge to the claim assignment" which <u>he</u> had no standing to assert. Id. at *5.

Tex. Nov. 28. 2007); Relford, *on reconsideration*, 323 B.R. at 681. I respectfully disagree, aligning myself with those courts that view Rule 3001(e)(3) as merely establishing who is entitled to file a proof of claim and not what evidence is necessary to prove its ownership. Kendall, 380 B.R. at 46 n.1; Povey, 2008 WL 1376271, at *6. It is counterintuitive to conclude that an assignee has less of a burden to establish its claim than a direct creditor. Rule 3001(e)(3) has a purpose separate and apart from the establishment of a claim. It is intended to make clear that disputed prepetition claim transfers are not an issue for the court's concern. That is not the point of requiring evidence of ownership for claims allowance. By demanding the identification of the owner of a claim to ensure that Debtor has an obligation to pay that creditor and, in exchange, will receive a discharge of its debt, Debtor is not seeking to challenge the transfer but merely to confirm that one has taken place.

Based on the foregoing, I find that the B-Real proofs of claim provide no support for the assignments and the eCast amended claims provide insufficient linkage to the original credit card claims and as such, are not entitled to the presumption of validity.

B.

Having found that all the challenged proofs of claim are deprived of the presumption does not mean that the claims should be disallowed. Armstrong, 320 B.R. at 106. Rather, as noted above, the burden shifts to the Claimants to establish their claim.[10] Most courts appear

---

[10] Some courts look to the debtor's schedules and conclude that if the claim is scheduled by the debtor as undisputed and in an amount equal to or greater than the amount of the proof of claim, little if any documentation is necessary, and the claim is *prima facie* valid. In re Leverett, 378 B.R. 793, 801 (Bankr. E.D. Tex. 2007); In re Moreno, 341 B.R. 813, 818 (Bankr. M.D. Fla. 2006); In re Burkett, 329 B.R. 820, 829 (Bankr.S.D. Ohio 2005). While I concur with the ultimate claim allowance decision as discussed below, I believe the proper application of the evidentiary burdens
(continued...)

to allow the claimants to amend their claims to provide the necessary documentation if they are able to do so. E.g., In re Taylor, 363 B.R. 303, 310 (Bankr. M.D. Fla. 2007); Shank, 315 B.R. at 813-14. However, in the final analysis, the preponderance of the evidence must support allowance of the claim as filed. Where as here, the creditor asks the Court to take judicial notice of the schedules as additional evidence for its claim, that proof is supplied where the debtor's schedules are consistent with the amount set forth in the deficient claim and do not indicate that the debt is "disputed," "unliquidated" or "contingent." In re Jorczak, 314 B.R. 474, 483 (Bankr. D. Conn. 2004) (*quoting* In re Bohrer, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) ("statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions")). See also Leverett, 378 B.R. at 804; Relford, 323 B.R. at 676.

Both eCast and B-Real have offered the Debtor's Schedule F as additional evidence of their asserted ownership of the disputed claims. I find this evidence to be compelling. First, each scheduled claim is identical to the penny to the amount contained in the proofs of claim. Moreover, eCast's proof of claim #11 and both B-Real's proofs of claim identify the last four digit of an account number identified by the Debtor that matches the last four digits of the account number associated with the original credit card claims.

I do, however, note that there is a discrepancy between B-Real's identification of the original creditor on claim #17 as Chase Bank USA, NA versus Debtor's identification

---

(...continued)
requires that I not look outside the proof of claim to determine its *prima facie* validity. However, once the burden shifts, the schedules are additional evidence that may corroborate the claim without the necessity of additional documentation. See p. 13 infra.

-11-

of the claimant as Chase Coldwater Creek but given the precise identity of the amount and account number, I do not find that to be, as Debtor suggests, a duplicate Chase claim. Debtor provided no testimony to refute the obligation or any basis to conclude that the claims, arising as they do from distinct accounts, are duplicative.[11] I find Debtor's objection to be without merit.

Given this proof and the absence of any evidence by the Debtor that refutes the foregoing, I will allow the claims as filed. No claims have been filed by the scheduled credit card merchant creditors and when Debtor completes her Chapter 13 plan, she will receive a discharge of these claims. To hold otherwise would result in a windfall to the Debtor who has readily acknowledged her obligation for these credit card debts.

I believe the foregoing under the facts of these contested matters appropriately balances the duties of the respective parties consistent with the legislative objectives of the Code and evidentiary burdens established by the Bankruptcy Rules. It recognizes that unsecured claims have become an "economic commodity bought and sold in the open market," In re Chakalee, ___B.R. ___, 2008 WL 555010, at *1 (Bankr. N.D. Oka. 2008), but achieves "[t]he fundamental purpose of the claims allowance process and the various rules for filing proofs of claim and allocating burdens of proof [which] is to provide a fair and inexpensive procedure for the proper determination of claims on the merits." Shank, 315 B.R. at 814. Creditors are not given leave to file proofs of claim with little or no documentation nor are debtors encouraged to object to claims they admittedly owe based

---

[11] I take judicial notice that Coldwater Creek is a woman's apparel store which participates in a preferred visa credit card program provided by Chase. www.coldwatercreek.com/CustServ/ChaseInfo.aspx.

<u>In re Marilyn C. Kincaid - Bankruptcy No. 07-15890DWS</u>

on perceived evidentiary advantages.  Objections under Rule 3001 thus serve a legitimate purpose and are not used to frustrate creditors or waste time while creditors are required to be mindful of the process if they wish to participate in a distribution from the estate.

An Order consistent with this Opinion shall issue.

*[signature: Diane W. Sigmund]*

---
DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated:   June 2, 2008

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| MARILYN C. KINCAID, | : | Bankruptcy No. 07-15890DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 2nd day of June 2008 upon consideration of the Debtor's Objections to (1) Claim #10 and #11 filed by eCast Settlement Corporation and (2) Claim #17 and #18 filed by B-Real LLC, after notice and hearing and for the reasons stated in the accompanying Opinion;

It is hereby **ORDERED** and **DECREED** that the Objections are **OVERRULED**. Claims #10, 11, 17, and 18 are allowed as filed.[1]

*Diane W. Sigmund* (signature)

DIANE WEISS SIGMUND
United States Bankruptcy Judge

---

[1] Confirmation of Debtor's Chapter 13 plan has been adjourned until June 5, 2008 pending resolution of these contested matters. As Debtor's plan proposes a 100% dividend to unsecured creditors, amendment to increase plan funding will be required.